Barbara ABRAMS, as Executrix of Lillian Hyman, Deceased, Plaintiff-Appellant,

v.

The UNITED STATES of America, Defendant-Appellee.

No. 1277, Docket 86-6054.

United States Court of Appeals, Second Circuit.

Argued May 7, 1986.

Decided Aug. 4, 1986.

Charles R. Van De Walle, Great Neck, N.Y. (Martin, Van de Walle, Guarino & Donohue, Great Neck, N.Y., on brief), for plaintiff-appellant.

Jordan Stanzler, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Steven E. Obus, Asst. U.S. Atty., New York City, on brief), for defendant-appellee.

Before VAN GRAAFEILAND, KEARSE and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Barbara Abrams, suing as executrix of the estate of her mother Lillian Hyman, appeals from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, *Judge*, dismissing her complaint seeking a refund of $26,220 in estate tax assessed on Lillian Hyman's estate and paid under protest. The district court granted the government's motion for summary judgment dismissing the complaint on the ground that, within three years of her death, Lillian had paid some $67,000 to a bank on a debt incurred by her husband Charles Hyman, and this amount was therefore includable in Lillian's estate under 26 U.S.C. § 2035(a) (1982) as a gift in contemplation of death. On appeal, Abrams contends that summary judgment should have been entered in her favor because the payment by Lillian was not in fact a gift to Charles but rather was either a payment of income taxes owed jointly by Charles and Lillian or a payment to recover property of Lillian that had been pledged to secure the debt incurred by Charles. Because the record reveals the existence of a genuine issue of material fact that has not been resolved, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

In the district court, the parties entered into a stipulation of facts, following which both sides moved for summary judgment. The facts to which the parties stipulated are as follows.

In January 1976, Charles obtained a $50,000 demand loan from Manufacturers Hanover Trust Co. (the "Bank"). In March 1976, Lillian delivered to the Bank $100,000 in New York State 6% bearer bonds to serve as security for Charles's loan. The bonds, due to mature in December 1980, had been purchased by Lillian with her own funds in July 1975.

On April 4, 1977, the Internal Revenue Service ("IRS") billed Charles and Lillian $89,021.82 for additional federal income tax, including interest, due on their joint returns for the years 1973–1975. Charles paid the $89,021.82 by two checks dated April 27, 1977, drawn on his account at the Bank. The date stamps on the backs of the checks indicate that the Bank made payment to the IRS on May 4, 1977.

On May 4, 1977, Charles increased his demand loan from the Bank from $51,359.75 to $140,000. The increase of $88,640.25 was used to pay the two checks,

totalling $89,021.82, to the IRS. Lillian's bonds served as collateral for the increase in the loan.

Between June 1977 and January 1978, Charles repaid $50,216.66 of the loan, reducing the balance to $89,783.34. In February 1978, Lillian withdrew money from five savings accounts belonging to her and repaid $67,231.19 of the loan, reducing the balance to $22,552.15.

Charles died in February 1979. In May 1979, Lillian, as executrix of his estate, repaid the balance of the loan out of the assets of that estate and obtained the release of her bonds that had secured the loan.

Lillian died in June 1980. The bonds that had been pledged to the Bank and recovered through repayment of Charles's loan were included in Lillian's estate. The IRS took the position, however, that the estate should also include the $67,231 that Lillian paid the Bank in 1978, on the ground that that payment was a gift to Charles made less than three years prior to her death. After adding this amount, the IRS assessed Lillian's estate an additional estate tax of $26,220 plus interest. Abrams, as Lillian's executrix, paid the additional tax and interest and filed a claim for a tax refund. The IRS took no action on the refund claim, and more than six months after filing the refund claim, Abrams brought this action.

On the basis of these stipulated facts both sides moved for summary judgment. The government maintained that the $67,231 paid by Lillian to reduce Charles's loan was a gift made within three years of Lillian's death and was thus taxable to Lillian's estate under 26 U.S.C. § 2035(a). Abrams argued that the $67,231 constituted a payment made to secure, *pro tanto*, the release of Lillian's bonds that had collateralized the loan and was in effect a payment of a joint income tax obligation, and thus was not includable in Lillian's estate.

In an Endorsement dated February 11, 1986, the district court granted the government's motion for summary judgment. Although the court found that "[t]he $67,000

was paid to the bank in part payment of the husband's loan and to have return [*sic*] security which [Lillian] had pledged to the bank to secure her husband's loan," it described the argument that Lillian's payment to the Bank constituted a payment of income tax as "disingenuous," stating that "[i]f [Lillian] had wanted to pay $67,000 of the $89,000 the husband paid as his and her joint federal income tax liability, she could have made that payment directly to IRS."

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, Abrams contends that for two reasons she, not the government, was entitled to summary judgment. First, she contends that because Lillian's bonds were held by the Bank as collateral for Charles's loan, Lillian's partial repayment of that loan in order to ensure *pro tanto* the release of her bonds was not a gift but rather was a transfer for full and adequate consideration, and thus the amount paid was excludable from Lillian's estate under 26 U.S.C. § 2035(b) (1982). Second, Abrams contends that, in light of the fact that Charles had borrowed the money to pay his and Lillian's joint income tax liability, Lillian's partial repayment of the loan constituted a payment of income tax, which, under Treas.Reg. § 25.2511–1(d), 26 C.F.R. § 25.2511–1(d) (1986), is not treated as a gift. While we are not persuaded that the district court erred in rejecting Abrams's second argument on the record before it, we conclude that her first argument may well have merit and that, although the record did not permit the entry of summary judgment in her favor, neither did it warrant the entry of summary judgment dismissing the complaint.

### A. *Summary Judgment Principles*

Summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proving that no genuine factual dispute exists rests on the party seeking summary judgment, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and inferences drawn from the evidence proffered must be viewed in the light most favorable to the party opposing the motion. *Id.; United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The fact that the parties have stipulated to certain facts and that both have moved for summary judgment does not necessarily mean that summary judgment may properly be granted for either party. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Board of Education*, 667 F.2d 305, 314 (2d Cir.1981).

Under these principles, the court should not have rejected Abrams's "full and adequate consideration" argument as a matter of law.

B. *Whether Lillian's Payment was a Transfer for Full Consideration*

With respect to decedents who died prior to January 1, 1982, §§ 2035(a) and (b)(1) of 26 U.S.C. provide, in pertinent part, as follows:

(a) Inclusion of gifts made by decedent

Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

(b) Exceptions

Subsection (a) shall not apply—

(1) to any bona fide sale for an adequate and full consideration in money or money's worth....

26 U.S.C. §§ 2035(a) and (b)(1). *See also* Treas.Reg. § 20.2035–1(a), 26 C.F.R. § 20.-2035–1(a) (1986) ("A decedent's gross estate includes under section 2035 the value of any interest in property transferred by a decedent in contemplation of death within 3 years before his death, except to the extent that the transfer was for a full and adequate consideration in money or money's worth...."); Treas.Reg. § 20.2043–1(a), 26 C.F.R. § 20.2043–1(a) (1986) (if the value of the property transferred exceeded the value of the consideration, "only the excess of the fair market value of the property ... over the price received by the decedent is included in ascertaining the value of his gross estate."). Abrams argues that under the exception stated in § 2035(b)(1), Lillian's payment to the Bank was not includable in Lillian's estate because the payment secured the removal *pro tanto* of the Bank's lien on Lillian's bonds and hence was a transfer for full consideration. This argument may well have merit.

The parties' stipulations make clear that Lillian's bonds were at risk to the extent that Charles's loan was unpaid. Lillian had delivered $100,000 worth of bearer bonds to the Bank. The balance on the loan prior to her payments was some $89,000. Had that entire amount remained unpaid, the Bank could have sold the bonds and retained $89,000 of the proceeds. Had the only payment in reduction of the $89,000 balance been the $22,000 paid by Charles's estate in 1979, the Bank could have sold the bonds and retained $67,000 of the proceeds. Instead Lillian recovered her bonds by virtue of her payment of $67,000 plus the $22,000 payment by Charles's estate.

It seems fundamental that the payment of money to remove a lien that has been placed on one's property to secure one's own debt may constitute a transfer for full consideration to the extent that the payment does not exceed the amount of the lien. *Cf. D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 183, 92 S.Ct. 775, 781, 31 L.Ed.2d 124 (1972) (removal of mechanic's lien constitutes a valid item of consideration for execution of a cognovit note). It is less certain whether such a payment will

amount to a transfer for full consideration, within the meaning of the federal estate tax law, when the debt underlying the transfer was incurred by a person other than the one whose property secures the debt. In the latter circumstance, a surety-ship relationship will usually exist between the debtor and the payor, *see Restatement of Security* § 82, comment *h* (1941), and the payor will normally have the right to recover the amount of the payment from the debtor. *Id.* § 104. If that amount can be so recovered, it may properly be considered an asset of the payor. Where, however, the debtor has insufficient assets to make whole the person who paid the debt in order to free the payor's property from the lien, that fact would warrant the conclusion that the payment to recover the property was a transfer for full consideration to the extent of (a) the value of the property recovered and (b) the payor's inability to recover the payment from the debtor.

Application of these principles to the case at hand raises the question whether Charles had sufficient net assets to have paid the entire loan to the Bank. If he did not, the consequences would appear to be twofold. First, Lillian's bonds were sure to be used by the Bank to eliminate Charles's indebtedness (whether or not the terms of the loan and collateral agreements required the Bank to look first to Charles for repayment before using the collateral); and second, Lillian would not have been able to recover from Charles for the Bank's sale of her bonds. Thus, to the extent that Charles lacked sufficient net assets to pay to the Bank the $67,000 paid by Lillian, the assets of Lillian and her estate would have been depleted to the extent of the shortfall.

The record in the district court does not reveal whether or to what extent Charles or his estate may have lacked the ability to repay the loan. In the absence of such information, judgment could not properly have been granted for Abrams on the "full and adequate consideration" theory, for she had the burden of showing that Lillian would not have been able to recover any of her $67,000 from Charles. On the other hand, the lack of such information did not warrant the granting of summary judgment in favor of the government, for in order to prevail on its motion, the government had the burden of showing that there was no genuine issue of fact as to the ability of Charles to repay the loan or to repay Lillian. The absence in the record of any information as to Charles's ability to repay should have led to the denial of both sides' summary judgment motions.

The government's principal response to Abrams's contention that the *pro tanto* removal of the lien on Lillian's bonds constituted full and adequate consideration is to argue that the pledge of those bonds was itself a gift since Lillian had been under no obligation to encumber her property to collateralize a debt owed by Charles. This argument does not advance the government's cause. It may well be that Lillian was not under any obligation to pledge her bonds; but to the extent that that pledge constituted a gift, it plainly was consummated more than three years prior to Lillian's death in 1980. Thus, the pledge was not within the reach of § 2035(a).

In light of the absence of any information as to Charles's ability to pay the entire debt secured by Lillian's bonds, we vacate the judgment dismissing the complaint and remand for further development of the record.

### C. *Whether the Partial Repayment Was a Payment of Income Tax*

■ While the above discussion suffices to warrant vacation of the judgment against Abrams, it does not dispose of her argument that she was entitled to the entry of summary judgment in her favor on another ground. The other ground advanced by Abrams is that Lillian's partial repayment of Charles's debt should be viewed as a payment of federal income tax that is outside the contemplation of § 2035(a). In support of this theory, Abrams points out that (1) the income tax liability was Lillian's and Charles's jointly, (2) the IRS re-

fused to allow them to pay the deficiency in installments because Lillian had sufficient assets to pay the full amount, and (3) the increase in Charles's loan from the Bank was for the purpose of paying the income tax deficiency. She argues that Lillian's repayment of a portion of Charles's loan should thus be deemed a payment of income tax. While we recognize that § 2035(a) apparently does not apply to payments by one spouse of all or more than half of the couple's income tax liability if they have filed a joint income tax return, *see* Treas.Reg. § 25.2511–1(d), 26 C.F.R. § 25.2511–1( ) (1986) (such payment not treated as a gift for gift tax purposes); *Harris v. Commissioner,* 340 U.S. 106, 107, 71 S.Ct. 181, 182, 95 L.Ed. 111 (1950) (federal estate tax and federal gift tax are construed *in pari materia*), it is clear that the district court did not err in denying Abrams's motion for summary judgment on this theory.

It is an "established tax principle that a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred." *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). While "a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Id.* at 149, 94 S.Ct. at 2137; *see Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 579–80, 97 S.Ct. 850, 857, 51 L.Ed.2d 48 (1977); *Federal Bulk Carriers, Inc. v. Commissioner,* 558 F.2d 128, 130 (2d Cir.1977). The form of the transaction and documentation reflecting that form normally are controlling unless there is evidence that, at the time of the transaction, the parties intended a different transaction:

> [W]e will assume that the acts of the parties and documentation surrounding the transactions reflect the intent of the parties unless we are given some evidence to the contrary. We will not re-

lieve a party from the tax consequences of the form in which he or she appears to have molded a transaction, in the absence of proof that the form does not properly reflect the transaction.

*Yamamoto v. Commissioner,* 73 T.C. 946, 954 (1980).

In considering Abrams's motion for summary judgment, the court was required to view the evidence in the light most favorable to the government, and the straightforward form of the transactions relating to Charles's payment of the Hymans' joint tax liability created a substantial obstacle to Abrams's attempt to have the court construe Lillian's later payment of Charles's debt as a payment of income tax. The evidence presented to the district court was surely inadequate to establish as a matter of law that the form of the transactions did not accurately represent the Hymans' intentions. And though summary judgment is rarely appropriate when subjective matters such as intent are material, *e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Wechsler v. Steinberg,* 733 F.2d 1054, 1058–59 (2d Cir.1984), the evidence here was insufficient even to create a genuine issue as to whether, contrary to the appearance created by Charles's writing his own checks to the IRS and increasing his own loan at the Bank, the Hymans intended that Lillian would pay $67,000 of the income tax. Thus, were this Abrams's only ground for challenging the judgment dismissing the complaint, we would doubtless affirm.

Since, however, as discussed in Part II.B. above, Abrams's "full and adequate consideration" argument may have merit and warrants a remand for further factual development, we would see no reason to foreclose Abrams from presenting additional evidence, if there is any, in support of the proposition that the Hymans in 1977 intended Lillian to pay part of the income tax liability.

## CONCLUSION

The judgment of the district court is vacated and the matter remanded for fur-

ther proceedings not inconsistent with this opinion. No costs.