**Luxley George MALSH, Plaintiff,**

v.

**Correctional Officer AUSTIN, et al., Defendants.**

No. 94 Civ. 6860(JGK).

United States District Court, S.D. New York.

Oct. 20, 1995.

Luxley G. Malsh, Fallsburg, NY, for plaintiff.

Dennis Vacco, Attorney General of the State of New York, New York City, for defendants.

## OPINION AND ORDER

KOELTL, District Judge:

Plaintiff Luxley George Malsh, an inmate currently incarcerated at the Woodbourne Correctional Facility (hereinafter Woodbourne), brought this action against defendants Thomas A. Coughlin III, former Com-

missioner of the New York State Department of Correctional Services, Robert Hanslmaier, Acting Superintendent of the Woodbourne Correctional Facility, Sergeant Daniel Reed, Dr. James Green, D.D.S., Dental Director of the dental clinic at Woodbourne, and Corrections Officer Austin. The plaintiff claims that a dental appointment was rescheduled in violation of his federal constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and contrary to Directives of the New York State Department of Correctional Services and Woodbourne and that those violations in turn were unlawful under 42 U.S.C. §§ 1983, 1985(3) and 1986. The plaintiff seeks exemplary damages, a declaratory judgement that defendants violated his rights, and injunctive relief barring future postponement of his dental care and retaliation against him. The defendants have moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint, arguing that this court lacks subject matter jurisdiction under Rule 12(b)(1) and that plaintiff's complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6).

On this motion to dismiss, the court accepts the allegations in the plaintiff's pro se complaint as true for purposes of this motion. *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). The pro se complaint is to be "liberally construed", *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), held to "less stringent standards than formal pleadings drafted by lawyers", and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 520–521, 92 S.Ct. at 595–596, quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Even taking all of the plaintiff's allegations as true and liberally construing his complaint, the plaintiff has failed to state a claim for violations of 42 U.S.C. §§ 1983, 1985(3) and 1986. Accordingly, the plaintiff's complaint must be dismissed.

The allegations in the complaint are as follows: the plaintiff was scheduled for a dental appointment on June 13, 1994 with the Woodbourne Dental Clinic. On June 13, his appointment was cancelled and rescheduled for July 6, 1994. When the plaintiff inquired as to why his appointment was rescheduled, he was informed by defendant Corrections Officer Austin that it was rescheduled because he was currently in "keeplock." The plaintiff was not satisfied with the response to his inquiry and filed a grievance against defendant Austin with the Woodbourne Grievance Office.

Defendant Dr. Green, the director of the dental clinic at Woodbourne, responded to plaintiff's grievance by submitting a memorandum to the Woodbourne Grievance Office explaining that, on June 13, 1994, plaintiff's appointment, which was a routine follow-up to his regular dental care, was rescheduled due to several dental emergencies which required immediate emergency attention. On June 29, 1994, a hearing was held in connection with the plaintiff's grievance. The grievance committee did not find any merit to the plaintiff's claim and dismissed the case. The plaintiff appealed the dismissal to defendant Acting Superintendent Hanslmaier; Hanslmaier subsequently denied the appeal. Seemingly in protest of the handling of his claim, the plaintiff thereafter chose not to keep his rescheduled appointment at the dental clinic on July 6, 1994.

The plaintiff also claims that, as a result of his arguments and complaints following the rescheduling of his dental appointment, he was threatened by parties unidentified in the complaint. The plaintiff alleges he was told that, if he continued to complain, a "Direct Order" report detailing his misbehavior would be filed against him, he would suffer physical violence, he could incur further detention in keeplock, and he might be subject to segregation.

The plaintiff's first claim is that he was denied his Fourteenth Amendment right to Due Process because he was denied adequate dental care. The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law. . . ." U.S. CONST.

amend. XIV, § 1. To allege a Fourteenth Amendment Due Process violation in this case, the plaintiff must allege that he was deprived of a constitutionally protected liberty interest. In determining whether state officials have deprived an inmate, such as the plaintiff, of such a protected "liberty" interest, the Supreme Court has recently instructed that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2295, 132 L.Ed.2d 418 (1995).

*Sandin* thus held that, for an inmate to prove he was deprived of a liberty interest protected by the Fourteenth Amendment, the inmate must meet the standard of an "atypical and significant hardship ... in relation to the ordinary incidents of prison life" and generally, this has been limited to freedom from restraint.

The initial question here is whether the plaintiff had a protected right not to have his dental appointment adjourned. Plaintiff's rescheduled dental appointment plainly does not meet the "atypical and significant hardship standard" articulated in *Sandin.* When compared to the examples given in *Sandin* of violated liberty interests which would satisfy this standard (involuntary commitment to a mental hospital, *Vitek v. Jones,* 445 U.S. 480, 491–494, 100 S.Ct. 1254, 1263–1264, 63 L.Ed.2d 552 (1980); involuntary administration of antipsychotic drugs, *Washington v. Harper,* 494 U.S. 210, 221–222, 110 S.Ct. 1028, 1036–1037, 108 L.Ed.2d 178 (1990)), it is clear that plaintiff's claim does not reach the severity necessary to violate the Fourteenth Amendment's Due Process Clause. A rescheduled routine dental appointment is not atypical, nor did it pose a significant hardship to the plaintiff in relation to the ordinary incidents of prison life, nor did it

involve any restraint against plaintiff; plaintiff was simply forced to wait three weeks for non-emergency dental care.

In *Sandin,* the Supreme Court explicitly rejected the prior reasoning articulated in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), which allowed courts to find protected liberty interests in either (1) the nature of the deprivation (e.g., how severe, in degree or kind) or (2) the State's rules governing the imposition of the deprivation (whether the rules, in effect, give the inmate a "right" to avoid the deprivation). *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2304. (Breyer, J., dissenting). Under the latter standard, the mandatory language of prison regulations could be found to create protected liberty interests. After *Sandin,* however, the inquiry must focus not on the mandatory nature of a State's rule governing the imposition of the deprivation, but rather on the nature of the deprivation itself.

The plaintiff bases his claim in part upon the rejected *Hewitt* methodology of identifying liberty interests from prison regulations which had used "language of an unmistakably mandatory character." *Hewitt,* 459 U.S. at 471–472, 103 S.Ct. at 871. The plaintiff argues that Woodbourne's own directives and procedures gave him a protected liberty interest. However, regardless of whether the Woodbourne directives required that the plaintiff must have his appointment on the day scheduled or that the grievance committee must follow certain prison procedural directives, the plaintiff does not have a protected liberty interest derived from the State's prison rules and has not suffered a violation of his Fourteenth Amendment Due Process rights.

■ The plaintiff's second claim arising from his rescheduled dental appointment alleges that the postponement of his dental appointment constituted cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII; see also *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1982) (the Eighth Amendment applies to the states through the

Due Process Clause of the Fourteenth Amendment). In *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court held that prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: adequate food, clothing, shelter, and medical care. Id. at ——, 114 S.Ct. at 1976. However, a constitutional violation occurs only where the deprivation alleged is objectively "sufficiently serious," and the official has acted with "deliberate indifference" to inmate health or safety. Id. at ——, 114 S.Ct. at 1977 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 302–03, 111 S.Ct. 2321, 2324, 2326–27, 115 L.Ed.2d 271 (1991)). The plaintiff's burden consists of both objective and subjective elements—the plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard and that the charged officials acted with a sufficiently culpable state of mind. See *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Koehl v. Dalsheim,* 1995 WL 331905, *3 (S.D.N.Y. Jun. 5, 1995) (No. 94 Civ. 3351 (JSM)). For an inmate to establish deliberate indifference to his serious medical needs in violation of his constitutional rights, the deprivation of medical care must be sufficiently serious, and the charged official must act with a sufficiently culpable state of mind. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway,* —— U.S. ——, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995), quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

■ A "sufficiently serious" deprivation is met when "a prison official's act or omission ... results[s] in the denial of the 'minimal civilized measure of life's necessities'." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977, quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The plaintiff's allegations do not satisfy this requirement. According to his own complaint, the plaintiff was regularly receiving dental care from March, 1994 to May 26, 1994. He was scheduled for routine operative work on June 13, 1994, not for an emergency procedure, according to the memorandum written by defendant Dr. Green in response to plaintiff's grievance. Although

plaintiff claims that he experienced a certain degree of pain, rescheduling the routine follow-up appointment for three weeks later does not constitute the denial of the "minimal civilized measures of life's necessities." *Wilson,* 501 U.S. at 294, 111 S.Ct. at 2321. Plaintiff's own complaint, although it admittedly states that his teeth were hurting him "badly", nowhere expresses that he believed his dental problem constituted an emergency or a "serious medical need". His actions subsequent to June 13, 1994 belie the urgency of the scheduled appointment because the plaintiff refused to attend his rescheduled dental appointment on July 6, 1994. If the plaintiff's dental problems rose to the level of a "serious medical need", the plaintiff hardly would have skipped his rescheduled appointment, regardless of how disgruntled he felt about the handling of his grievance.

It is clear from other cases that have considered inmate complaints of the denial or delay of medical treatment that plaintiff's dental problems do not constitute a "serious medical need." *Estelle,* 429 U.S. at 103, 97 S.Ct. at 290; see *Tyler v. Rapone,* 603 F.Supp. 268, 271 (E.D.Pa.1985) (toothache does not qualify as a "serious medical need"). *See Todaro v. Ward,* 565 F.2d 48, 52–53 (2d Cir.1977) (discussing examples of denied or delayed medical treatment which meet the "serious medical needs" requirement); *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (discussing cases which have met the "serious medical needs" requirement). In *Estelle,* 429 U.S. at 104, n. 10, 97 S.Ct. at 291, n. 10, the Supreme Court illustrated the types of conditions that would qualify as serious medical needs by citing examples from several Circuit Court decisions: for example, loss of an ear, *Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974), and refusal of a doctor to treat an allergic reaction after the injection of penicillin despite his knowledge that the inmate was allergic to the drug, *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.), *cert. denied sub nom. Thomas v. Cannon,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). For other types of serious medical needs, see *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (a brain tumor) and *Hathaway v.*

*Coughlin*, 37 F.3d 63 (2d Cir.1994) (delay in removing broken pins from hip for over two years and nearly fifty complaints of pain). Conversely, in addition to toothaches, other conditions that have failed to satisfy the constitutional "serious medical need" standard are: a mild concussion and broken jaw, *Jones v. Lewis*, 874 F.2d 1125 (6th Cir.1989); a kidney stone, *Hutchinson v. United States*, 838 F.2d 390 (9th Cir.1988); and a broken finger, *Rodriguez v. Joyce*, 693 F.Supp. 1250 (D.Me.1988). In light of the plaintiff's own actions and representations, and a comparison to prison medical needs reflected in other cases, it is evident that the plaintiff's complaint fails to state a claim for the violation of his Eighth Amendment rights because the alleged deprivations fail to rise to the level of a "sufficiently serious" medical deprivation.

The plaintiff also alleges that he was forced to endure threats from parties, who are not specifically identified in his complaint, in connection with his complaints regarding the cancellation of his June 13 dental appointment. According to plaintiff, he was threatened with disciplinary action, physical violence, an extension of his time in keeplock, and possible segregation, if he continued to seek dental care. The plaintiff does not allege that he suffered any injury or damages from these alleged threats. Such alleged threats do not amount to violations of constitutional rights. Verbal assault, standing alone, is not a "judicially cognizable injur[y] in a § 1983 civil rights action." *Garcia v. Torreggiani*, 1985 WL 3957, *2 (S.D.N.Y. Nov. 26, 1985) (No. 84 Civ. 9125 (LBS)). See also *Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y.), *aff'd*, 891 F.2d 278 (2d Cir.1989) (harassment by prison guards, without physical injury, does not amount to a constitutional violation); *Zeno v. Cropper*, 650 F.Supp. 138, 141 (S.D.N.Y.1986) (in prison context "vile and abusive language ... 'no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim'"). The plaintiff's claim of alleged threats does not allege a constitutional claim under § 1983. Moreover, the allegations could not support a

claim against any of the individual defendants because none of the defendants is alleged to have personally made the threats to plaintiff. *See e.g., McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).[1]

The plaintiff has also failed to state a claim for conspiracy under 42 U.S.C. §§ 1983, 1985(3) and 1986. To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or 'meeting of the minds', that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Duff v. Coughlin*, 794 F.Supp. 521, 525 (S.D.N.Y.1992), quoting *Katz v. Morgenthau*, 709 F.Supp. 1219, 1231 (S.D.N.Y.), *aff'd in part, rev'd in part*, 892 F.2d 20 (2d Cir. 1989). The plaintiff has not pleaded a conspiracy because he has not pleaded the facts showing that the defendants actually entered into such an agreement. Conclusory, vague and general allegations of conspiracy such as those in this case are insufficient. *See, e.g., Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977); *Duff v. Coughlin*, 794 F.Supp. 521, 525 (S.D.N.Y.1992). Moreover, there can be no conspiracy to violate the plaintiff's constitutional rights because, as explained above, the plaintiff has failed to allege any facts showing that the actions concerning the plaintiff involved any violations of his constitutional rights. *See Roesch v. Otarola*, 980 F.2d 850, 854 (2d Cir.1992) (where the plaintiff could not maintain a cause of action under § 1983 against a state officer, plaintiff's claims that non-state participants conspired with the state officer to deprive him of his constitutional rights were properly dismissed); *Murray v. Gardner*, 741 F.2d 434, 440 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 813 (1985) (if no constitutional violation occurred, the conspiracy issue need not be addressed).

The plaintiff has also failed to allege a violation of 42 U.S.C. § 1985(3) because the plaintiff has failed to allege that he was the

---

1. Indeed there are no particularized allegations against Commissioner Coughlin with respect to any of the claims in this case and the complaints against him must be dismissed on this basis in any event.

victim of a conspiracy against him based on some "class based animus." 42 U.S.C. § 1985(3) prohibits conspiracies undertaken "for the purpose of depriving, either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges or immunities under the laws." *See Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,* 968 F.2d 286, 290–91 (2d Cir.1992). The Supreme Court added a "class-based animus" requirement to § 1985(3) to prevent it from being broadly, and erroneously, interpreted as providing a federal remedy for "all tortious, conspiratorial interferences with the rights of others." *Id.* at 291, quoting *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff nowhere alleges that he was a victim of a conspiracy due to his membership in some protected class.

■ The plaintiff's failure to allege an actionable § 1985(3) claim dooms his claim under § 1986 because the latter only creates a cause of action for "neglect to prevent" conspiracies in violation of § 1985(3). Thus, where no action lies under § 1985(3), no action can lie under § 1986. *Levy v. City of New York,* 726 F.Supp. 1446 (S.D.N.Y.1992); *Martin Hodas, East Coast Cinematics, Inc. v. Lindsay,* 431 F.Supp. 637, 645 (S.D.N.Y. 1977); *Barrett v. United Hospital,* 376 F.Supp. 791, 806 n. 70 (S.D.N.Y.), *aff'd,* 506 F.2d 1395 (2d Cir.1974).

■ Finally, regardless of whether the plaintiff has a constitutionally cognizable claim on any of the grounds discussed above, which this Court finds he does not, all of the named defendants are entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages when they are sued in their personal capacity as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, insubstantial lawsuits. *Lennon v. Chief William P. Miller of the City of Troy,* 66 F.3d 416, 420 (2d Cir.1995), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; see also *Zavaro v. Coughlin,* 970 F.2d 1148, 1153 (2d Cir.1992). Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Robinson v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (citing *Malley v. Briggs,* 475 U.S. 335, 340–41, 106 S.Ct. 1092, 1095–1096, 89 L.Ed.2d 271 (1986)). The objective reasonableness test is met—and the defendant is entitled to qualified immunity—if "officers of reasonable competence could disagree" on the legality of defendant's actions. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096; accord *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied sub nom. Lillis v. Golino,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Further, the use of an "objective reasonableness" standard permits qualified immunity claims to be decided as a matter of law. *Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992).

■ For the plaintiff to overcome the qualified immunity defense, he must demonstrate that he possessed a clearly established constitutional right. Three factors should be considered when determining whether there is a clearly established right: (1) whether the right in question was defined with "reasonable specificity;" (2) whether relevant decisional law supports the existence of the right in question; and (3) whether under preexisting law, a reasonable defendant official would have understood that his actions were unlawful. *Benitez v. Wolff,* 985 F.2d 662 (2d Cir. 1993), citing *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). To the extent that the plaintiff claims he has any statutory or constitutional right beyond his clearly established right to dental care, such as the right to have dental care on a specific date in a non-emergency situation, or

to have various grievance procedures followed, the record demonstrates that such a right was certainly not clearly established and indeed would not have been recognizable by a reasonable official. Further, even if the record did present a violation of a constitutional right, which this Court believes it does not, cancelling the plaintiff's dental appointment and rescheduling it for three weeks later, and thereafter affording the plaintiff the benefit of a grievance proceeding, were objectively reasonable. At the very least, reasonable officers could disagree about the constitutionality of such actions, which would entitle the defendants to qualified immunity. Compare *Lennon v. Chief William P. Miller of the City of Troy,* 66 F.3d 416 (2d Cir.1995).

Accordingly, the defendants' motion to dismiss the plaintiff's complaint is granted and the complaint is hereby dismissed.

**SO ORDERED.**