**Luxley George MALSH, Plaintiff,**

v.

**Correction Counsel Madeline GARCIA, Sergeant Frank DenHollander, Phillip Coombe, Jr., Ms. Lynn Carroll, Acting Superintendent Robert Hanslmaier, Defendants.**

**No. 95 Civ. 1139(JGK).**

United States District Court, S.D. New York.

July 15, 1997.

Luxley George Malsh, Woodbourne, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, New York City by Michael Cohen, Assistant Attorney General, for Defendants.

*Opinion and Order*

KOELTL, District Judge.

The plaintiff, Luxley George Malsh, brought this action pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986, alleging that the defendants, who are prison officials and employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. The parties have now cross-moved for summary judgment.

**I.**

The plaintiff was incarcerated at the Sullivan Correctional Facility ("SCF") beginning shortly after September 13, 1993. (Complaint Statement of Facts, ¶ 5; Affidavit of Madeline Garcia ("Garcia Aff.") at ¶ 4). The plaintiff was involved in a paternity suit in the Schenectady County Family Court at the time of his incarceration. (Complaint Statement of Facts, ¶¶ 4–5).

On or about October 4, 1993, Teresa Thrasher, the plaintiff's former common-law wife, wrote to an official at SCF requesting that the plaintiff be prohibited from corresponding with her, her son Dominique (who the plaintiff alleges is his son), and her two daughters. (October 4, 1993 letter, attached as Exh. A to Garcia Aff.). In response to Thrasher's request, her name was placed on the plaintiff's negative correspondence list (Negative Correspondence List, attached as Exh. B to Garcia Aff.), and both Thrasher and the plaintiff were informed of this fact. (October 13, 1993 Memorandum, attached at Exh. C to Garcia Aff). The plaintiff was explicitly advised that disciplinary action could be taken against him if he continued to correspond with Thrasher. (*Id.*).

On or about February 3, 1994, the plaintiff was transferred to the Woodbourne Correctional Facility ("WCF"). (Complaint Statement of Facts, ¶ 10). In March 1994, the plaintiff began writing to Claudette Nelson, a woman whose picture he saw in a newspaper. (*Id.*). Nelson contacted WCF and requested that the plaintiff be prohibited from writing to her. (Chronological Entry Sheet, attached as Exh. H to Garcia Aff.). Defendant Sergeant Frank DenHollander of WCF directed the plaintiff to stop writing to Nelson. (Complaint Statement of Facts, ¶ 10; Garcia Aff., ¶ 14.)

The plaintiff alleges that DenHollander refused to disclose the name of a second woman, presumably Thrasher, to whom the plaintiff was not supposed to write. (Complaint Statement of Facts, ¶ 10.) The plaintiff further alleges that he then contacted several prison officials, including defendants Madeline Garcia and Superintendent Robert Hanslmaier, in an unsuccessful attempt to gain access to his negative correspondence list. (Complaint, Statement of Facts, ¶¶ 10–12).

In early December 1994, the plaintiff received correspondence from the New York State Department of Health containing a form affidavit to amend a birth certificate, which was to be completed and signed by both parents. (Affidavit for Birth Certificate, attached as Exh. E to Garcia Aff.). The plaintiff completed his portion of the affidavit in order to amend the birth certificate of "Dominique Travis Price" to indicate that he was the father. (*Id.*) The plaintiff attempted to forward the affidavit to Thrasher by sending it to the Schenectady County Department of Social Services. (*Id.*) The plaintiff

mailed this correspondence in an envelope with the name and identification number of another inmate, George Lawrence. (*Id.*) This type of so-called "kiting" of correspondence is expressly prohibited by DOCS Directive No. 4422. (DOCS Directive No. 4422(III)(B)(19), attached at Exh. F to Garcia Aff.).

On December 12, 1994, Garcia received a telephone call from Thrasher informing her that she had received the birth certificate affidavit from the plaintiff. (Inmate Misbehavior Report, attached as Exh. D to Garcia Aff.). After confirming Thrasher's allegations with the Schenectady County Department of Social Services, (Garcia Aff., ¶ 9), Garcia notified WCF's Senior Mail and Supplies Clerk, defendant Lynn Carroll, of the plaintiff's violation, (Garcia Aff., ¶ 11).

At that time, Carroll showed Garcia a piece of mail addressed by the plaintiff to Thrasher. (See Inmate Misbehavior Report, attached as Exh. D to Garcia Aff.; December 7, 1994 Correspondence, attached as Exh. E to Garcia Aff.). Because Thrasher was on the plaintiff's negative correspondence list, Garcia instructed Carroll not to mail the envelope. (See Inmate Misbehavior Report, attached as Exh. D to Garcia Aff.). The plaintiff's attempted correspondence with a person on his negative correspondence list constituted a violation of DOCS Directive No. 4422. (DOCS Directive No. 4422(III)(B)(4), attached at Exh. F to Garcia Aff.).

On December 13, 1994, Garcia wrote an inmate misbehavior report charging the plaintiff with two violations of Inmate Rule 180.11, which states that inmates shall comply with and follow the guidelines and instructions given by prison staff regarding facility correspondence procedures. (Chronological Entry Sheet, attached at Exh. D to Garcia Aff.). On December 19, 1994, Lieutenant Anthony DiBartolo conducted a Tier III hearing concerning Garcia's report, found the plaintiff guilty of the charges, and gave him a penalty of 60 days' keeplock as well as 60 days' loss of recreation, packages, commissary, phones, special events, and movies. (Hearing Packet, attached at Exh. A. to Affidavit of Anthony DiBartolo ("DiBartolo Aff.")). On December 23, 1994, DiBartolo reversed the charges based on his belief that the plaintiff could not be prohibited from corresponding with Thrasher absent a court order. (Memorandum, attached as Exh. B. to DiBartolo Aff.; DiBartolo Aff., ¶ 3). However, DiBartolo need not have reversed these charges, because a court order is required only when a facility seeks to prohibit correspondence between an inmate and that inmate's child. (See Note to DOCS Directive No. 4422(III)(B)(3), attached at Exh. F to Garcia Aff.).

The plaintiff asserts that these events were the product of a conspiracy against him undertaken by the defendants in retaliation for complaints made by the plaintiff against various members of the prison staff. (Complaint Statement of Facts, ¶ 13.) As further evidence of this conspiracy, the plaintiff cites a July 27, 1994 incident in which a corrections officer encountered the plaintiff and "started to get in to [his] family court matter concerning Teresa Thrasher." (*Id.*).

## II.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the out-

come of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

When, as in this case, both parties seek summary judgment, the Court must " 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Abrams v. United States,* 797 F.2d 100, 103 (2d Cir. 1986) (quoting *Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 314 (2d Cir.1981)). Only where one of the parties is entitled to judgment as a matter of law upon material facts not genuinely in dispute is the Court warranted in granting summary judgment.

Finally, because the plaintiff appears pro se, the complaint, "however inartfully pleaded," must be held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984).

The plaintiff alleges that the defendants' refusal to mail his correspondence to Thrasher and their punishment of him for violations of the correspondence regulations constitute infringements on his First Amendment rights to free expression and access to the courts, and his Eighth Amendment right to be free of cruel and unusual punishment.

The Supreme Court considered the limits of First Amendment guarantees in the context of censorship of prisoner mail in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *limited and overruled in part on other grounds by Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). After noting that "First Amendment guarantees must be 'applied in light of the special characteristics of the ... environment,' " *id.* at 409–10, 94 S.Ct. at 1809–10 (quoting *Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)) (alteration in original), the Court reviewed earlier decisions involving "incidental restrictions on First Amendment liberties by governmental action." *Id.* at 411–12, 94 S.Ct. at 1810. It concluded that censorship of prisoner mail is justified if "the regulation or practice in question ... further[s] an important or substantial government interest unrelated to the suppression of expression" and "the limitation of First Amendment freedoms ... [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 413, 94 S.Ct. at 1811.

In this case, the defendants acted under the authority of DOCS Directive No. 4422. DOCS Directive No. 4422 permits disciplinary action to be taken against an inmate who submits mail to a person who is on his negative correspondence list. (DOCS Directive No. 4422(III)(B)(4), attached at Exh. F to Garcia Aff.). DOCS Directive No. 4422 prohibits "kiting," the sending out of correspondence using another inmate's name and identification on the envelope. (DOCS Directive No. 422(III)(B)(19), attached at Exhibit F to Garcia Aff.). DOCS Directive 4422 also provides that correspondence that violates the Directive may be opened and returned to the inmate. (DOCS Directive No. 4422(III)(B)(20), attached at Exh. F to Garcia Aff.).

■ The Court of Appeals for the Second Circuit has found that Directive No. 4422 conforms to the requirements set out in *Mar-*

*tinez* and is therefore constitutional. *See Hall v. Curran*, 818 F.2d 1040, 1044 (2d Cir.1987) (discussing constitutionality of Directive No. 4422). Thus the defendants actions, which were plainly authorized by DOCS Directive No. 4422, do not violate the plaintiff's First Amendment rights.

Moreover, although the plaintiff's correspondence appears to have been an attempt to send Thrasher documents relating to his pending paternity suit, it did not constitute privileged legal mail because it was not sent to an attorney, legal representative, or legal services organization. (See DOCS Directive No. 4421(II)(B), attached at Exh. F to Garcia Aff.). Furthermore, if the documents did, in fact, have to be sent to Thrasher, the plaintiff could have pursued any number of lawful options instead of mailing the documents in contravention of the DOCS Directive. The defendants' actions did not amount, therefore, to an unconstitutional deprivation of the plaintiff's First Amendment rights.

■ The defendants are also entitled to summary judgment on the plaintiff's Eighth Amendment claims. The plaintiff asserts that the defendants' refusal to mail his outgoing correspondence to Thrasher, their punishment of him for violations of correspondence rules, and their alleged failure to disclose the names on his negative correspondence list constituted cruel and unusual punishment. However, none of these allegations, even if true, rise to the level of a constitutional violation.

■ "[C]onditions that are restrictive and even harsh are part of the penalty that criminal offenders pay for their offenses against society." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985) (internal quotations omitted). The constitutional prohibition against cruel and unusual punishments is intended to protect inmates from serious deprivations of basic human needs such as adequate food, clothing, shelter and medical care, and requires prison officials to take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 831–33, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). The plaintiff was not deprived of any such basic human needs. Furthermore, the punishment imposed upon the plaintiff for violations of Directive No. 4422 was also not excessive to the point that it constituted a violation of the Eighth Amendment. As explained above, the defendants acted well within the broad discretion granted to them in the area of discipline of inmates.

■ The defendants are also entitled to summary judgment on the plaintiff's First and Eighth Amendment claims based on the doctrine of qualified immunity. Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir.1996); *Abdush–Shahid v. Coughlin*, 933 F.Supp. 168, 184–85 (N.D.N.Y.1996).

■ Three factors should be considered when determining whether there is a clearly established right: (1) whether the right in question was defined with "reasonable specificity;" (2) whether relevant decisional law supports the existence of the right in question; and (3) whether under preexisting law, a reasonable defendant official would have understood that his actions were unlawful. *See Frank v. Relin*, 1 F.3d 1317, 1328 (2d Cir.1993); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir.1993).

■ As explained above, the plaintiff does not have a right to unrestricted correspondence. Nor does he have a right to be free from reasonable punishment for his violations of prison rules. While he does have clearly established constitutional rights under the First, Eighth, and Fourteenth Amendments, none of the particular situations described by the plaintiff could be considered to be the violation of a clearly established right, particularly in view of the fact that the defendants acted in accordance with a directive that has been held constitutional by the Court of Appeals for the Second Circuit. As such, it was objectively reasonable for them to believe that their actions were

lawful, and they are entitled to qualified immunity.

## III.

■ The plaintiff also seeks relief pursuant to 42 U.S.C. §§ 1985(3) and 1986. The plaintiff has not pleaded a conspiracy under § 1985 because he has not pleaded facts nor come forward with any evidence showing that the defendants actually entered into such an agreement. Conclusory, vague and general allegations of conspiracy such as those in this case are insufficient. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992); *see also Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995).

■ The plaintiff has also failed to allege a violation of § 1985(3) because the plaintiff has failed to allege that he was the victim of a conspiracy against him based on some class-based animus. Section 1985(3) prohibits conspiracies undertaken "for the purpose of depriving, either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges or immunities under the laws." *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,* 968 F.2d 286, 290–91 (2d Cir.1992); *see also Malsh,* 901 F.Supp. at 763–64. The Supreme Court added a "class-based animus" requirement to § 1985(3) to prevent it from being broadly and erroneously interpreted as providing a federal remedy for "all tortious, conspiratorial interferences with the rights of others." *Jews for Jesus, Inc.,* 968 F.2d at 291 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)); *see also Malsh,* 901 F.Supp. at 764. The plaintiff nowhere alleges that he was a victim of a conspiracy due to his membership in some protected class.

■ The plaintiff's failure to allege an actionable § 1985(3) claim dooms his claim under § 1986 because the latter creates a cause of action only for "neglect to prevent" conspiracies in violation of § 1985. Thus, where no action lies under § 1985, no action can lie under § 1986. *See Malsh,* 901 F.Supp. at 764; *Martin Hodas, E. Coast Cinematics v.*

*Lindsay,* 431 F.Supp. 637, 645 (S.D.N.Y. 1977); *Barrett v. United Hosp.,* 376 F.Supp. 791, 806 n. 70 (S.D.N.Y.), *aff'd,* 506 F.2d 1395 (2d Cir.1974).

## IV.

In his Complaint, the plaintiff also alleges that the defendants violated his Fourteenth Amendment due process rights. The plaintiff seeks summary judgment on his due process claims, arguing that the defendants' imposing a penalty on him that included 60 days of keeplock as well as 60 days' loss of recreation, packages, commissary, phones, special events, and movies, deprived him of his liberty interest without a sufficient hearing.

■ The defendants also move for summary judgment on these claims. Relying on *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the defendants argue that as a matter of law the penalty imposed on the plaintiff, which was lifted after only five days, does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485, 115 S.Ct. at 2301. However, as the Court of Appeals for the Second Circuit recently stated in *Miller v. Selsky,* 111 F.3d 7 (2d Cir.1997), the Supreme Court in *Sandin* "did not intimate that disciplinary confinement could never, as a matter of law, impose such a hardship." *Id.* at 8–9. The Supreme Court noted that the prisoner's confinement in disciplinary segregation in that case "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Sandin,* 515 U.S. at 486, 115 S.Ct. at 2301. A court considering whether disciplinary confinement implicates a liberty interest must carefully consider the specific conditions of the inmate's confinement. *See Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 9.

■ On the record before the Court, it cannot be determined whether the plaintiff did in fact suffer a deprivation of liberty. Neither party has presented the factual record for this Court to determine whether the plaintiff suffered an atypical, significant de-

privation in which a state might conceivably create a liberty interest.[1] Nor has either side presented evidence as to whether the plaintiff was in fact denied due process of law. Thus, the cross-motions on this claim are denied without prejudice to renewal upon either parties' presentation of a sufficient factual record.

## V.

■■■ Finally, defendants Phillip Coombe and Hanslmaier argue that all the claims asserted against them, including the plaintiff's due process claims, should be dismissed because the complaint fails to allege sufficient personal involvement. The fact that Coombe and Hanslmaier had supervisory authority over the prison staff is insufficient to hold them personally liable for damages arising from constitutional violations alleged under § 1983. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). In order to establish personal liability, the plaintiff must show direct participation, a failure to remedy the alleged wrong after learning of it, the creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates. *See Sealey v. Giltner,* 116 F.3d 47, 51–52 (2d Cir.1997); *Black,* 76 F.3d at 74; *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

The plaintiff fails to allege facts or produce any evidence to establish personal supervisory liability on the part of either Coombe or Hanslmaier. The plaintiff also does not allege any direct participation by either Hanslmaier or Coombe in the events that gave rise to his due process claim. The only allegation by the plaintiff of direct participation by either Hanslmaier or Coombe is his allegation that Hanslmaier denied him access to information in WCF files pertaining to his correspondence list. This allegation is only relevant to the plaintiff's First Amendment claims, which were dismissed above, and has no bearing on his due process claim. Therefore, the defendant is entitled to sum-

mary judgment on the plaintiff's due process claims against Hanslmaier and Coombe.

## CONCLUSION

The defendants motion for summary judgment on the plaintiff's First and Eighth Amendment claims, and the claims he asserts under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 is *granted.* Hanslmaier and Coombe's motion for summary judgment on the plaintiff's due process claim is *granted.* The motions of Garcia, DenHollander, Carroll, and the plaintiff for summary judgment on the plaintiff's due process claim are *denied without prejudice to renewal.* The remainder of the plaintiff's motion for summary judgment is *denied.*

## SO ORDERED.

---

1. The Court is also unable to determine whether the defendants are entitled to summary judgment on the plaintiff's due process claims based on the doctrine of qualified immunity. The defendants have not provided sufficient facts for this Court to determine whether the defendants violated a clearly established statutory or constitutional right of which a reasonable person would have known.