Mario **RAMIREZ**, Plaintiff,

v.

Officer W. **HOLMES**, Defendant.

No. 94 Civ. 7354 (JGK).

United States District Court, S.D. New York.

March 31, 1996.

---

Mario Ramirez, Fishkill, New York, pro se.

Dennis C. Vacco, Attorney General, State of New York by David Monachino, Assistant Attorney General, New York City, for Defendant.

### OPINION AND ORDER

KOELTL, District Judge:

Mario Ramirez, a prisoner presently incarcerated at the New York State Downstate Correctional Facility in Fishkill, New York, brings this action *pro se* pursuant to 42 U.S.C. § 1983 against the defendant identified as "Officer W. Holmes," presumably a New York State Department of Corrections Officer. Ramirez's Amended Complaint sets forth five specific claims. First, Ramirez alleges that Holmes prevented him from using the prison law library on August 17, 1994. (Am.Compl. ¶ 1.) Second, Ramirez alleges that Holmes prevented him from taking a shower on three occasions in late August 1994. (Am.Compl. ¶ 2.) Third, Ramirez claims that on August 14, 1994 Holmes discriminated against him by "setting me up with drugs," specifically that Holmes stated that he saw the plaintiff smoking marijuana, while the plaintiff maintains that he never smoked or possessed any drugs at all. (Am. Compl. ¶ 3.) Fourth, Ramirez claims that on September 7, 1994 Holmes conducted an allegedly improper search of Ramirez's cell in violation of prison regulations. (Am.Compl. ¶ 3.) Finally, Ramirez claims that Holmes and another Corrections Officer identified as "S. Sasse" threatened Ramirez. (Am.Compl. ¶ 4.)

The defendant now moves to dismiss the Amended Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is **granted.**

### I.

On a motion to dismiss, the factual allegations of the complaint are accepted as true and all reasonable inferences are construed in the plaintiff's favor. *See Branham v. Meachum,* 77 F.3d 626, 628–29 (2d Cir. 1996); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). A court should dismiss a complaint under Fed.R.Civ.P. 12(b)(6) only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir. 1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). In addition, a *pro se* complaint such as the one in this case is to be liberally

construed and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *see also Branham,* 77 F.3d at 628–29.

In this case, even taking all of Ramirez's allegations as true, the Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed.

## II.

Ramirez's first claim is that he was prevented access to the prison law library on August 17, 1994. This allegation does not state a constitutional violation.

The constitution guarantees prisoners meaningful access to the courts and, absent representation by counsel, reasonable access to a law library is a required part of that access. *See Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977); *Morello v. James,* 810 F.2d 344, 346–47 (2d Cir.1987); *Smith v. O'Connor,* 901 F.Supp. 644, 648 (S.D.N.Y.1995) (Sotomayor, J.). But unlimited, unrestricted or unmanaged access at the demand of a prisoner is not required by the constitution. Prison officials may impose reasonable restrictions on use of a prison law library. *See, Morello,* 810 F.2d at 347 (exercise of right of access to courts may be "shaped and guided by the state but cannot be obstructed"); *Jermosen v. Coughlin,* No. 89 Civ. 1866, 1995 WL 144155, at *4 (S.D.N.Y. Mar. 30, 1995) (Ward, J.) ("Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right."); *see also Oltarzewski v. Ruggiero,* 830 F.2d 136 (9th Cir.1987) (permissible to require escort to use prison law library); *Flittie v. Solem,* 827 F.2d 276, 280 (8th Cir.1987) (permissible to prevent domination of library by few inmates). Moreover, where it is alleged that access to a law library has actually been denied, a plaintiff must allege that the deprivation proximately caused some prejudice or denial of a legal claim. *See Morello,* 810 F.2d at 347; *Smith,* 901 F.Supp. at 648 (dismissing prisoner complaint over destruction of legal materials because no prejudice alleged); *Howard v. Leonardo,* 845 F.Supp.

943, 946 (N.D.N.Y.1994) ("[W]here an inmate alleges a denial of access on some other claim, i.e., that the actions of an individual prevented him from accessing the law library or meeting a court deadline, then the court must determine whether the prisoner has suffered an actual injury in a pending suit."); *Duff v. Coughlin,* 794 F.Supp. 521, 524 (S.D.N.Y.1992) (granting summary judgment against plaintiff where complaint did not identify prejudice suffered and no details were produced).

In this case, the Amended Complaint sets forth a single incident when Holmes allegedly prevented Ramirez from using the law library. There is no allegation, however, that Ramirez suffered any prejudice from being unable to visit the library that day. There is no allegation of why Ramirez sought to use the law library or what legal claims or proceedings he was pursuing. Nor is it alleged that Ramirez was unreasonably prevented from using the library. There is no allegation that Ramirez could not have used the library at another time, or indeed that he was denied access to the library on any other occasion. While Ramirez does allege that Holmes used a belittling racial epithet, he has failed to allege any injury or harm resulting from his inability to use the library on the single occasion he cites. In fact, Ramirez does not allege that he was pursuing or intended to pursue a legal matter at the time he was allegedly denied use of the law library, and the lack of such an allegation is fatal to his claim. *See Smith,* 901 F.Supp. at 649 (complaint dismissed where allegations did not show how denial of access, even if done deliberately and maliciously, "materially prejudiced a pending legal action or one that [the plaintiff] sought to file in the courts"); *Derrick v. Melendez,* No. 91 Civ. 3075, 1992 WL 373474 (S.D.N.Y.) (Sand, J.) (complaint dismissed despite conclusory allegations of retaliatory motive where allegations did not include mention of prejudice from isolated incident denying plaintiff use of legal text), *aff'd,* 9 F.3d 1536 (2d Cir.1993) (table). Therefore, Ramirez's first claim based on denial of access to the law library on August 17, 1994 is dismissed.

## III.

Ramirez's second claim is based on three occasions where Holmes allegedly denied the plaintiff the opportunity for a shower. The Court construes this claim as an allegation that Ramirez was denied his Eighth Amendment right to be free from cruel and unusual punishment. *See* U.S. Const. amend. VIII; *see also Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962) (applying Eighth Amendment to states through Fourteenth Amendment due process clause).

■ To state such a claim based on prison conditions, a plaintiff must allege a sufficiently serious deprivation under an objective standard and that the prison official acted with deliberate indifference. *See Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999–1000, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter,* 501 U.S. 294, 297–98, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the 'minimal civilized measure of life's necessities.'" *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324. In addition, the deliberate indifference element requires that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Branham,* 77 F.3d at 631 (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995)); *see also Malsh v. Austin,* 901 F.Supp. 757, 762–63 (S.D.N.Y.1995).

■ The denial of a shower on each of three isolated occasions does not constitute a sufficiently serious deprivation, nor can it be said that a prison official who denied an inmate a shower on three occasions acted with deliberate indifference to the inmate's health and safety. In fact, there are no allegations in this case of restrictive confinement or the frequency with which Ramirez was allowed to bathe. Courts have found that prisoners who asserted far more serious deprivations did not state a claim for violation of their Eighth Amendment rights. *See, e.g., Arce v. Walker,* 907 F.Supp. 658, 662–63 (W.D.N.Y.1995) (failure to provide exercise for eighteen days did not constitute Eighth

Amendment violation); *Graham v. Kuhlmann,* No. 88 Civ. 6618, 1990 WL 210298, at *4 (S.D.N.Y. Dec. 12, 1990) (Martin, J.) (shave and shower once per week provided minimally adequate hygiene). *See also Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir.) (Posner, J.) (modifying injunction requiring three showers per week to require only one), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). *Cf. Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996).

Accordingly, the defendant's motion to dismiss Ramirez's second claim for denial of a shower on three isolated occasions is granted and that claim is dismissed.

## IV.

Ramirez's third and fourth claims, (Am. Compl. ¶ 3), are based on alleged violations of prison regulations by Holmes. In the first instance, Ramirez claims that on August 14, 1994 Holmes reported the plaintiff had smoked marijuana—a report Ramirez maintains was false. The Amended Complaint is not explicit with respect to how Ramirez was "set up with drugs" except to allege that Holmes "stated that he saw [Ramirez] smoking...." (Am.Compl. ¶ 3.) Construing the allegation broadly, Ramirez alleges that Holmes made a false report of Ramirez's drug use. Ramirez also alleges that on September 7, 1994 Holmes conducted an improper search of Ramirez's cell in violation of prison directives. Neither purported violation of prison policy states a claim upon which relief can be granted under 42 U.S.C. § 1983.

## A.

■ As a general matter, there is no federal right to have state law properly administered. *See Smith,* 901 F.Supp. at 647–48. Therefore, an alleged violation of a state prison regulation relating to either drug use or cell searches, to the extent the regulation may represent state law, does not in an of itself state a federal constitutional claim.

■ Moreover, with respect to false misbehavior reports specifically:

It is well settled that "... a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986). Rather, an inmate has the right not to be deprived of a protected liberty interest without due process of law.

*Alnutt v. Cleary*, 913 F.Supp. 160, 165 (W.D.N.Y.1996). *See Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y.) ("Absent any facts showing that such a [false disciplinary] report actually deprived plaintiff of liberty or property, ... no Constitutional issue is raised."), *aff'd*, 891 F.2d 278 (2d Cir.1989). Ramirez does not allege that any action was taken as a result of the allegedly false report, that he was denied the opportunity to contest the report, or that no hearing or grievance procedure was available to him. In sum, Ramirez does not allege that the process available to him in connection with the misbehavior report was procedurally deficient. Therefore, no constitutional claim arises from the false misbehavior report in the absence of any further action or deprivation.

### B.

■ Procedural rules, such as those governing cell searches and misbehavior reports, may create independent protected liberty interests under narrow circumstances. As the Supreme Court has recently explained:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... [T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, —— U.S. ——, ——, 115 S.Ct. 2293, 2295, 132 L.Ed.2d 418 (1995). Thus, for Ramirez to state a claim under the Fourteenth Amendment for the alleged denial of a liberty interest created by state prison regulations, he must meet the standard of "atypical and significant hardship ... in rela-tion to the ordinary incidents of prison life" which has generally been limited to freedom from restraint. *See Malsh*, 901 F.Supp. at 761.

Neither a false misbehavior report nor an improper search constitute restraints on the plaintiff. Even if they did or if they otherwise imposed significant hardship on Ramirez, these isolated incidents do not begin to approach the severity of the types of violations which have been found to satisfy the *Sandin* standard. *See Malsh*, 901 F.Supp. at 761 (citing cases); *Arce*, 907 F.Supp. at 662 (in spite of regulation mandating one hour of daily exercise outside the cell, denial of such exercise for eighteen days was not severe deprivation). Indeed, in *Sandin* itself a prisoner's placement in segregated confinement for a month, allegedly in violation of prison regulations, did not state a constitutional claim. *See Sandin*, —— U.S. at ——, 115 S.Ct. at 2301.

Even if Ramirez had identified a sufficient liberty interest, he has not alleged that such an interest was denied without due process. He has not alleged that he was denied a hearing or that a hearing was unavailable.

■ Finally, the conclusory allegation that Holmes's actions were racially motivated does not turn these insufficient allegations, unconnected to any injury to the plaintiff, into a violation of Ramirez's constitutional rights. *See Wright*, 714 F.Supp. at 667 (citing *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir.1985) (epithets reflecting racial prejudice not actionable absent connection to injury)); *Zeno v. Cropper*, 650 F.Supp. 138, 141 (S.D.N.Y.1986) (in prison context "vile and abusive language ... 'no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim'"); *Garcia v. Torreggiani*, No. 84 Civ. 9125, 1985 WL 3957, at *2 (S.D.N.Y. Nov. 26, 1985) (Sand, J.) ("[M]ere verbal abuse, slander, threats, and harassment are not judicially cognizable injuries in a § 1983 civil rights action.").

Accordingly, Ramirez has failed to state a claim based on a due process violation under the Fourteenth Amendment based on the alleged violations of prison regulations.

Therefore, the third and fourth claims in paragraph three of the Amended Complaint are dismissed.

## V.

■ The plaintiff's fifth and final claim relates to alleged harassment at the hands of Holmes and another Corrections Officer. The plaintiff emphasizes, however, that "[t]he officers of Downstate Correctional Facility never Physically abused me[,]" but rather that "it was always Mentally" and that Ramirez was "constantly getting threatened...." (Am.Compl. ¶ 4.) These allegations do not state a claim.

Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) ("The claim that a prison guard called [the plaintiff] names also did not allege any appreciable injury and was properly dismissed."); *Malsh*, 901 F.Supp. at 763; *Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y.1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); *Zeno*, 650 F.Supp. at 141.

In this case Ramirez expressly states that no physical abuse took place and the harassment was confined to threats by the Corrections Officers. Because the plaintiff has alleged only verbal abuse without any physical injury or damage, the claim based on this abuse is dismissed.

## VI.

The defendant finally argues that because he has qualified immunity the Amended Complaint should be dismissed, irrespective of whether any of the five claims represent a constitutionally cognizable claim. This argument is persuasive and provides an alternative and independent ground upon which the Amended Complaint is dismissed.

■ The doctrine of qualified immunity shields government officers from civil liability when they are sued in their personal capacities for performance of their discretionary duties. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). This doctrine shields government officials to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *see also Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir.1992); *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Malsh*, 901 F.Supp. at 764 (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) and *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir.1987)). Qualified immunity is an effective shield when government officers of reasonable competence could disagree on whether the conduct at issue was legal. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991), *cert. denied sub nom. Lillis v. Golino*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Whether qualified immunity applies may be decided as a matter of law. *See Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992); *Lazoda v. Maggy*, 900 F.Supp. 596, 601 (N.D.N.Y.1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991)).

■ For Ramirez to defeat Holmes's use of the qualified immunity shield, he must demonstrate that he possessed a clearly established constitutional right with respect to his claims. There are three factors to consider in evaluating whether a plaintiff has demonstrated such a clearly established right:

(1) Whether the right in question was defined with "reasonable specificity"; (2) whether relevant decisional law supports the existence of the right in question; and (3) whether under preexisting law, a rea-

sonable defendant official would have understood that his actions were unlawful.

*Malsh,* 901 F.Supp. at 764 (citing *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). *See also Jermosen,* 945 F.2d at 550.

■ In this case, Ramirez has failed to demonstrate that he had any clearly established statutory or constitutional rights with respect to any of the alleged conduct. While the rights of inmates to access to a law library and to be free from cruel and unusual punishment were well-established at the times of the events in question, they have never been applied to create rights in the situations identified by the plaintiff in this case. Moreover, even if there were any such rights, which I have found there were not, officers of reasonable competence could disagree as to whether Holmes's conduct as alleged by Ramirez was legal. Therefore, qualified immunity bars a suit against Holmes in his personal capacity and is an alternative and independent basis upon which the Amended Complaint is dismissed.

## CONCLUSION

The plaintiff has failed to state a claim upon which relief may be granted for all five of the claims set forth in the Amended Complaint. Accordingly, for the foregoing reasons the defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is **granted.** The Amended Complaint is dismissed and the Clerk of the Court is ordered to close this case.

**SO ORDERED.**