**Darryl HARRIS, Plaintiff,**

v.

**Supt. John P. KEANE; Deputy Supt. Charles Greiner, Lt. W. Patterson; Lt. Albriton; Sgt. F.V. O'Connor; Sgt. Leghorne; Sgt. Webbe; C.O. H. Mujahid; C.O. A. Francis, C.O. Gary Ponico; C.O. C. Holder; C.O. G. Delaney; C.O. K. Jacobs; and C.O. L. Cannon, Defendants.**

**No. 94 Civ. 7092 (DAB).**

United States District Court, S.D. New York.

April 21, 1997.

---

**2.** It is unnecessary to reach the question of whether Judge Spatt was properly served with process.

Darryl Harris, Rome, NY, pro se Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, New York City (Kay–Ann D. Porter, Assistant Attorney General, of counsel), for Defendants.

## MEMORANDUM AND ORDER

BATTS, District Judge.

The Pro Se Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging various violations of his constitutional rights pursuant to the Fifth, Eighth and Fourteenth Amendments.[1] Defendants now move for summary judgment on all Plaintiff's claims.

## I. BACKGROUND

Plaintiff, Darryl Harris, is an inmate currently in the custody of the New York State Department of Correctional Services ("DOCS") at Oneida Correctional Facility. During the alleged events relevant to this action he was confined to Sing Sing Correctional Facility ("Sing Sing"). (Pl.'s & Defs.' Local Civil Rule 3(g) Statements ("Stmts.") ¶ 1.)[2]

The Defendants in this action, who were at the time of the complained-of incidents employed at Sing Sing, are now employed at different facilities, and include Superintendent John P. Keane, Deputy Superintendent Charles Greiner, Lieutenant Robert Patterson, Correction Sergeant Michael Leghorne, and Correction Officers Andrew Francis, Christopher Holder, and Kent Jacobs of Sing Sing, Lieutenant Paul Albritton of Queensboro Correctional Facility, Correction Sergeant Francis O'Connor of Greene Correctional Facility, Correction Sergeant William Webbe of Fishkill Correctional Facility, Correction Officer Gary Ponico of Green Haven Correctional Facility and Correction Officer Lewis Canon of Fulton Correctional Facility.[3] (Id. ¶ 2.)

On January 3, 1993, an Inmate Misbehavior Report ("IMR") was issued by former Defendant Mujahid against Plaintiff. (Id. ¶ 3.) Plaintiff was charged with violating Prison Rules 104.13, Creating a Disturbance; 107.10, Interference with an Employee; 106.10, Refusing a Direct Order; 115.10, Refusing Search or Frisk; and 110.10, No Identification Card. (Id. ¶ 4.) As a result, Plaintiff was put on keeplock[4] status. (Id. ¶ 8.) The IMR was given to Plaintiff on January 4, 1993, and Plaintiff was released from keeplock after his Tier II hearing on January 6, 1993. (Id. ¶¶ 6, 8.) At the Tier II hearing Plaintiff pled not guilty to the charges and was found not guilty because the charges were unsubstantiated by the IMR. (Id. ¶ 7.)

---

**1.** "Plaintiff submits, inter alia, that he was harassed and threatened with bodily harm by defendants C.O. A. Francis ... and C.O. K. Jacobs.... Plaintiff also submits that he was unlawfully keeplocked pursuant to false misbehavior reports issued by defendants C.O. Francis (twice), Sgt. F.V. O'Connor ..., and C.O. H. Mujahid ..., without due process of law. Plaintiff, also submits that he was denied due process of law at the February 19, 1993; July 15, 1994; and August 26, 1994 Tier II disciplinary hearings conducted by defendants Lt. Patterson and Lt. Albritton, because he was denied witnesses, a fair hearing and was removed from the February 19, 1993 hearing by defendant Lt. Patterson. Plaintiff further submits that in retaliation for filing a grievance, defendant C.O. Francis issued a false inmate misbehavior report ..., on August 28, 1993 against plaintiff; and, plaintiff did not receive a timely response to his grievance or his Tier

II appeal." (Pl.'s Hem. Law at 1–2.) Defendants' Local Civil Rule 3(g) Statements.

**2.** These citations refer to both the Plaintiff's and the Defendants' Local Civil Rule 3(g) Statements.

**3.** Defendant Correction Officer H. Mujahid was dismissed from the action pursuant to the Court's December 1, 1994 Order. In addition, Plaintiff's April 3, 1995 letter to the Court, requesting dismissal of Defendant Correction Officer G. Delaney from this action, was so ordered. The parties dispute whether Defendant Canon was properly served with the Summons and Complaint which would preclude personal jurisdiction over that Defendant. However, Defendant, having moved for summary judgment, (Defs.' Mem. Law at 1), and having failed to make a motion in this regard, continues in this action.

**4.** Keeplock is a form of segregation in which the inmate is confined to his cell.

On February 7, 1993, two additional IMRs were issued against Plaintiff. (*Id.* ¶ 9; Porter Aff. Ex. B.) The first IMR, written by Defendant Francis, charged Plaintiff with violating Rules 106.10, Refusing a Direct Order and 115.10, Refusing Search and Frisk Procedures, and was served on the Plaintiff on February 9, 1993. (Pl.'s & Defs.' 3(g) Stmts. ¶¶ 10–12.) The second IMR, written by Defendant Ponico, charged Plaintiff with violating Rules 109.11, Leaving An Assigned Area Without Authorization and 180.18, Failure to Accept Program Assignment. (*Id.* ¶ 13.)

The incident which prompted the second IMR occurred at approximately 5:30 p.m. (Defs.' 3(g) Stmt. ¶ 13.) However, Plaintiff contends that the incident could not have occurred at that time because his "job function was complete prior to 5:30 p.m. om [sic] February 7, 1993, as a result of the incident with Defendant Francis that occurred around 5:15 p.m." [5] (Pl.'s 3(g) Stmt. ¶ 13.) Although Ponico's charges against Plaintiff were dismissed prior to a Tier II disciplinary hearing, (Pl.'s & Defs.' 3(g) Stmts. ¶ 16), as a result of these allegations Plaintiff was placed in keeplock from February 7–8, 1993. (*Id.* ¶ 15. )

The Tier II hearing, regarding the first IMR of February 7, 1993, commenced on February 19, 1993, and was presided over by Defendant Robert Patterson. (*Id.* ¶¶ 17–18.) At the hearing, Plaintiff pled not guilty to the charges. (*Id.* ¶ 19.) Plaintiff requested that Defendants Francis and Ponico and Sergeants Leeman and Taylor testify at the Tier II hearing. (*Id.* ¶ 20.)

On February 20, 1993, during the continuation of the Tier II hearing, Defendant Patterson removed Plaintiff from the hearing because Plaintiff was allegedly disruptive, uncooperative, and compromised institutional safety and correctional goals. (Defs.' 3(g) Stmt. ¶ 21). Plaintiff maintains that he was removed because he challenged the accusations levied against him by Defendant Francis. (Pl.'s 3(g) Stmt. ¶ 21.)

After Plaintiff was removed, Defendant Patterson refused to hear the testimony of Leeman, Taylor and Ponico, stating that their testimony would jeopardize institutional safety and correctional goals, despite the fact that they had first-hand knowledge of the alleged incidents. (Pl.'s & Defs.' 3(g) Stmts. ¶¶ 22 & 24.) Consequently, Patterson found Plaintiff guilty of the charges based on the February 7, 1993 IMR and Francis' testimony. (*Id.* ¶¶ 25–26.) Plaintiff was placed in keeplock for seven days, and lost his package, commissary, and phone privileges. (*Id.* ¶ 25.) On February 20, 1993, Plaintiff appealed the Tier II disposition. On March 1, 1993, the Tier II decision was reversed. (*Id.* ¶¶ 27–28.)

On August 23, 1993, another IMR was issued against Plaintiff by Defendant Francis charging Plaintiff with violating Rules 102.10, Threats and 106.10, Refusing a Direct Order. (*Id.* ¶¶ 29–30.) Plaintiff was served with this IMR on August 24, 1993, and a Tier II hearing was scheduled to commence on September 1, 1993. (*Id.* ¶ 32.) The hearing was adjourned until September 6, 1993, when the charges were dismissed as untimely. (*Id.* ¶ 33.) Plaintiff maintains that he was keeplocked at sometime between August 23, and September 5, 1993.

Plaintiff filed an inmate grievance complaint alleging that Defendant Francis fabricated the charges in the August 23, 1993 IMR. (*Id.* ¶ 35; Porter Aff. Exs. D & E.) Upon subsequent investigation by the Central Office Review Committee, it found that Plaintiff's allegations were unsubstantiated and dismissed his grievance. (Pl.'s & Defs.' 3(g) Stmts. ¶ 36.)

On September 22, 1993, Plaintiff was ordered to submit to a urinalysis exam because Defendant Holder suspected him of smoking marijuana. (*Id.* ¶¶ 38–39.) Defendant Holder did not personally observe Plaintiff smoking but states in his Affidavit that Correction Officer Valentine informed Holder that Plaintiff was smoking a cigar in his cell. (Holder Aff. at 4.) Plaintiff contends that no investigation took place. (Pl.'s 3(g) Stmt. ¶ 40.) Plaintiff's urinalysis test results were negative. (Pl.'s & Defs.' 3(g) Stmts. ¶ 41.) Plain-

---

**5.** Plaintiff's assigned duties were to collect and wash the pots and pans in the lower messhall, in addition to cleaning up his work area after he finished. (Defs.' 3(g) Stmt. ¶ 14.)

tiff was keeplocked for four hours while awaiting his testing. (*Id.* ¶ 43.)

On July 11, 1994, an IMR was issued by Defendant O'Connor against Plaintiff, charging him with violating Rules 104.13, Creating a Disturbance; 106.10, Refusing a Direct Order; and 102.10, Threats. (*Id.* ¶ 44.) As a result of the IMR, Plaintiff was placed in keeplock on July 11, 1994, and was served with the IMR on July 12, 1994. (*Id.* ¶¶ 46–47.)

A Tier II hearing commenced on July 15, 1994. (*Id.* ¶ 47.) Defendant Albritton presided over the hearing. (*Id.* ¶ 48.) Upon completion of the hearing, Plaintiff was found guilty of violating Rule 106.10, Refusing a Direct Order and found not guilty of violating Rules 104.13, Creating a Disturbance and 102.10, Threats. (*Id.* ¶ 49.) Defendant Albritton's stated reason for the disposition was based on Plaintiff's statement that he refused to comply with the officer's orders. (Defs.' 3(g) Stmt. ¶ 50.) Plaintiff contends that Albritton told him that the guilty disposition was to "cover everyone's backside." (Pl.'s 3(g) Stmt. ¶¶ 50–51.) Plaintiff's supports his position by pointing out that Albritton crossed out the not guilty disposition and substituted a guilty disposition. (Pl.'s 3(g) Stmt. ¶ 51.) Plaintiff was counseled and reprimanded but credited with four days prehearing confinement. (Pl.'s & Defs.' 3(g) Stmts. ¶ 51.) Plaintiff filed an appeal. (*Id.* ¶ 56.) On August 24, 1994, Plaintiff's Tier II hearing was reversed by Defendant Keane's designee, Captain Stark, on procedural grounds. (*Id.* ¶ 57.)

As a result of this incident, Plaintiff filed an inmate grievance complaint on July 11, 1994, alleging that he was placed in keeplock by Defendant O'Connor for his refusal to comply with Correction Officer Geising's orders. (*Id.* ¶ 52; Porter Aff. Ex. F.) Plaintiff's grievance was investigated by Defendant Albritton, who attempted to interview Plaintiff concerning the circumstances surrounding the grievance. (Pl.'s & Defs.' 3(g) Stmts. ¶¶ 53–54.) Plaintiff was too busy to speak with Defendant Albritton. (*Id.* ¶ 54.)

Consequently, on July 14, 1994, Plaintiff's grievance was denied. (*Id.* ¶ 55.)

On August 20, 1994, an IMR was issued by Defendant Canon charging Plaintiff with violating Rules 106.10, Refusing a Direct Order; 109.12, Movement Regulation Violation; 104.13, Creating a Disturbance; and 124.16, Messhall Serving/Seating Violation. (*Id.* ¶ 58.) Plaintiff was served with the IMR on August 21, 1994. Defendant Patterson presided over a Tier II hearing on August 26, 1994. (*Id.* ¶¶ 60–61.)

Upon completion of the hearing, Plaintiff was found guilty of violating Rules 106.10, Refusing a Direct Order and 124.16, Messhall Serving/Seating Violation, and not guilty of violating Rules 104.13, Creating a Disturbance and 109.12, Movement Regulation Violation. (*Id.* ¶ 62.) Defendant Patterson's disposition was based on Plaintiff's and Correction Officer Farina's testimony, the IMR, (*Id.* ¶ 63), and Plaintiff's grievance.[6] Plaintiff was keeplocked for seven days from August 20, through August 27, 1994. (*Id.* ¶ 65.) Thereafter, Plaintiff filed an appeal of the Tier II determination, which was subsequently reversed. (*Id.* ¶¶ 66–67.) Plaintiff also filed a grievance against Defendant Canon on August 20, 1994. (Compl. ¶ 7.)

## II. DISCUSSION

The principles applicable to summary judgment are familiar and well-settled. Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir. 1988). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

---

**6.** Plaintiff states that he refused to clean the seat and sit down after receiving a direct order from Defendant Canon because he was there to have breakfast, and was not on clean-up duty. (Pl.'s & Defs.' 3(g) Stmts. ¶ 64; Compl. ¶ 7.)

As a general rule, all ambiguities and all inferences drawn from the underlying facts must be resolved in favor of the party contesting the motion, and all uncertainty as to the existence of a genuine issue for trial must be resolved against the moving party. *La-Fond v. General Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir.1995). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. LILC*, 933 F.2d 187, 191 (2d Cir.1991).

██ Further, in a pro se case, the Court must judge the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest.").

### A. Section 1983 Claims

Section 1983 provides a remedy against every person who, under color of state law, deprives another of rights protected by the Constitution. 42 U.S.C. § 1983. Plaintiff alleges violations of his Fifth, Eighth and Fourteenth Amendment rights.[7]

#### 1. *Fourteenth Amendment, Due Process Claims*

##### a. Keeplock Confinement

Plaintiff alleges that as a result of Defendants' actions he spent twenty-three days in keeplock confinement, in violation of his due process rights. (Pl.'s Mem. Law at 9.)

The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." Accordingly, an analysis of whether Plaintiff was denied due process turns first, on whether there exists an interest which has been deprived, *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992), *cert. denied*, 510 U.S. 837, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993), and second, on whether the procedures implemented to protect that interest afforded due process. *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983).

██ Plaintiff claims he has a liberty interest in not being keeplocked. First, the Court must determine whether there is a liberty interest. An interest may be found to arise from the due process clause itself. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court stated that the due process clause "standing alone confers no liberty interest in freedom from state action 'within the sentence imposed.'" *Sandin*, 515 U.S. at ——, 115 S.Ct. at 2298 (quoting *Hewitt*, 459 U.S. at 468, 103 S.Ct. at 869). As in *Sandin*, the Court here finds that Plaintiff has no liberty interest, in being keeplocked for twenty-three days, created by the due process clause; accordingly, Plaintiff must show a state-created liberty interest.

Prior to *Sandin* the question of whether a state regulation created a liberty interest depended on whether the language of the

---

7. Specifically Plaintiff alleges:

"First Cause of Action." The acts of the defendants, and each of them, deprived plaintiff of his right to due process, equal protection and vital law library time, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

"Second Cause of Action." The acts of the defendants Patterson, O'Connor, Webbe, Leghorn, Mujahid, Francis, Delaney and Canon, deprived plaintiff of liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

"Third Cause of Action." The acts of the defendants, and each of them, subjected plaintiff to cruel and unusual punishment/treatment in violation of the Eighth Amendment to the United States Constitution.

"Fourth Cause of Action. The acts of the defendants, and each of them separately and cumulatively, caused plaintiff undue psychotherapy, the ingestion of excessive amounts of Propylthiouracil and Motrin, due to all of the above and fear of being retaliated against for exposing the defendants, and each of their misconduct...." (Compl. at 10.)

Plaintiffs allegations can also be found throughout the Complaint. *See also supra* note 1.

regulation was "of an unmistakably mandatory character." *Id.* at ——, 115 S.Ct. at 2293. Accordingly, a regulation could give rise to a liberty interest if it used words such as "shall" or "must," indicating that particular procedures had to be followed. *See Rodriguez v. Phillips*, 66 F.3d 470 (2d Cir.1995). According to the *Sandin* Court, this approach "encouraged prisoners to comb regulations in search of mandatory language on which to base" constitutional claims; "create[d] disincentives for States to codify prison management procedures" because standardized procedures may create additional liberty interests; and "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Sandin*, 515 U.S. at ——, 115 S.Ct. at 2299.

Consequently, the Court in *Sandin* shifted the focus away from the mandatory nature of state statutes or regulations to the "nature of the deprivation." *Id.* Under *Sandin*, the important consideration is whether the deprivation constitutes a significant,departure from ordinary prison conditions. *Id.* at ——, 115 S.Ct. at 2295; *Malsh v. Austin*, 901 F.Supp. 757, 761 (S.D.N.Y.1995). The state-created "interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at ——, 115 S.Ct. at 2300 (citations omitted); *Miller v. Selsky*, 111 F.3d 7, 8–9 (2d Cir. 1997).

The *Sandin* Court held that disciplinary segregation for 30 days did not present this type of atypical, significant deprivation, nor did the deprivation trigger due process protection of its own force. *Sandin*, 515 U.S. at ——–——, 115 S.Ct. at 2301–02. In making its determination, the Court noted that it found no significant distinction between the inmates' conditions whether inside or outside the disciplinary segregation, nor did the state's act affect the duration of that plain-

tiff's sentence. *Id.* at ——–——, 115 S.Ct. at 2301–02.

The Second Circuit's post-*Sandin* decisions are unanimous that keeplock of 60 days or less in New York prisons is not an "atypical hardship." *See, e.g., Frazier v. Coughlin*, 81 F.3d 313, 317–18 (2d Cir.1996) (neither twelve day confinement in SHU nor eleven month confinement in Close Supervision Unit was the type of atypical, significant deprivation in which New York might conceivably create a liberty interest); *Duncan v. Keane*, No. 93 Civ. 6026, 1996 WL 511573, at *2 (S.D.N.Y. Aug. 22, 1996) (58 days in keeplock); *Trice v. Clark*, No. 94 Civ. 6871, 1996 WL 257578, at *2–*3 (S.D.N.Y. May 16, 1996) (150 days in SKU); *Camacho v. Keane*, No. 95 Civ. 0182, 1996 WL 204483, at *2 (S.D.N.Y. Apr. 25, 1996) (40 days keeplock); *Ramirez v. Coughlin*, No. 93 Civ. 0765, 1996 WL 194324, at *3–*4 (S.D.N.Y. Apr. 22, 1996) (30 days combination of SHU and keeplock); *Carter v. Carriero*, 905 F.Supp. 99, 104 (W.D.N.Y.1995) (270 in SHU).

In light of the Court's holding in *Sandin*, and the resulting case law in this Circuit, Plaintiff's keeplock confinement on separate occasions for a maximum total of 23 days [8] does not implicate a liberty interest since it does not impose an atypical, significant hardship of which Plaintiff would be entitled to due process protections. Having failed to identify a liberty interest, the Court need not consider the process afforded to the Plaintiff. Consequently, Plaintiff's due process claims fail as a matter of law.

### b. Access to Law Library

Plaintiff also alleges that he was denied access to the law library in violation of his due process rights.

The Constitution guarantees prisoners meaningful access to courts, and for pro se plaintiffs, reasonable access to the law library. *See Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977); *Morello v. James*, 810 F.2d 344, 346–47 (2d Cir.1987); *Ramirez v. Holmes*, 921 F.Supp. 204, 206 (S.D.N.Y.1996). However, that access is not unlimited, and prison offi-

8. Defendants contest many of the days Plaintiff claims to have been keeplocked.

cials may impose reasonable restrictions on the use of prison law libraries. *Morello,* 810 F.2d at 347.

■ To sustain a claim based on actual denial of access to the law library, the plaintiff must allege that the deprivation proximately caused some prejudice or denial of a legal claim. *Id.; Ragland v. Crawford,* No. 95 Civ. 10069, 1997 WL 53279, *6 (S.D.N.Y. Feb.7, 1997); *Duff v. Coughlin,* 794 F.Supp. 521, 524 (S.D.N.Y.1992) (granting summary judgment, where complaint did not describe any prejudice suffered). In the case before this Court, Plaintiff's alleged deprivation of access to the law library was temporary, lasting only one day. (Pl.'s Mem. Law at 4.) In addition, Plaintiff has not sufficiently plead any actual injury resulting from not having access to the law library. Therefore, Plaintiff's claim on this issue is dismissed.

### c. Retaliation

Plaintiff alleges that false IMRs were issued in retaliation for his having exercised his constitutional rights to "access the law library" and remain "free from cruel and unusual punishment" pursuant to the Eighth Amendment. (Pl.'s Mem. Law at 27.) Furthermore, Plaintiff alleges that Francis filed a false IMR on August 23, 1993, in retaliation for Plaintiff having contested the February 7, 1993 IMR. (Pl.'s Mem. Law at 2, 27; Compl. ¶ 3.)

■ A prisoner has a right not to be subjected to false misconduct charges in retaliation for his exercise of a constitutional right.[9] *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988). However, the filing of a false misbehavior report, does not, by itself, violate a prisoner's right to due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Webb v. Artuz,* No. 93 Civ. 5985, 1996 WL 452260 (S.D.N.Y. Aug.8, 1996). Instead, the Plaintiff

bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison official's decision to discipline Plaintiff. *Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Graham v. Henderson,* 89 F.3d 75, 79–80 (2d Cir.1996); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988); *Ragland,* 1997 WL 53279, at *6. In addition, prisoners' claims of retaliation must be viewed with skepticism and with particular care. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

■ Plaintiff has failed to show that the circumstances surrounding his denial of access to the law library is constitutionally protected or to show any connection between the allegedly false IMR and Plaintiff's access to the library. Accordingly, this claim is dismissed.

■ As to the portion of Plaintiff's claim addressing the Eighth Amendment, quoted above, the Court will treat this as a claim that Defendants filed several false IMRs in retaliation for Plaintiff having filed grievances. There is a constitutional right of access to the courts and governmental officials for redress of grievances. *Graham,* 89 F.3d at 80; *Colon,* 58 F.3d at 872. However, Plaintiff has not pled with sufficient particularity how the filing of the grievances resulting in retaliation. Plaintiff filed three grievances, one against Defendant Francis, one against Defendant O'Connor, and one against Defendant Jacobs.[10] After filing a grievance against Defendant Francis, Francis never filed another IMR. The same is true for Defendant O'Connor. Defendant Jacobs never filed an IMR. Therefore the Court fails to see how he was retaliated against for filing a grievance. Plaintiff has also failed to allege, whether the particular Defendants even knew about Plaintiff's grievances and, beyond any conclusory statements, why there would be any retaliation.

**9.** Plaintiff also claims the report filed by Defendant Holder, accusing Plaintiff of smoking marijuana, was false. (Compl. ¶ 4.) Defendant Holder allegedly made the report because he did not like Plaintiff. (*Id.*) However, Plaintiff's claim is

deficient because Holder never filed an IMR against Plaintiff.

**10.** Plaintiff claims on December 24, 1993, he filed a grievance against Jacobs. (Compl. ¶ 5.)

■ Regarding Plaintiff's allegation that Francis' August IMR was in retaliation for Plaintiff appealing or challenging the February IMR, Plaintiff has failed to make a sufficient showing of any connection between the two acts. *Gill v. Mooney*, 824 F.2d 192, 194–95 (2d Cir.1987). The time period is also too long to draw any inferences of a connection. *Colon*, 58 F.3d at 872.

Accordingly, Plaintiff's retaliation claims are dismissed as a matter of law.

### d. Defendants Keane and Greiner

Plaintiff alleges that Keane and Greiner failed to comply with DOCS rules and regulations by not responding to his grievance within the 15 day time frame provided in 7 N.Y.C.R.R. ch. 5 § 253.8, Appeal Procedure,[11] and thereby violated his due process rights. (Compl. ¶ 6, at 8; Pl.'s Mem. Law at 2, 29.)

■ Under the analysis adopted by the Supreme Court in *Sandin*, and as discussed above, the prison regulations requiring that a grievance disposition be returned within 15 days does not create an interest to which due process rights attach. Consequently, Plaintiff's claim of a denial of due process fails as a matter of law.

### 2. *Eighth Amendment*

In Plaintiff's Third Cause of Action he makes a bare allegation of Eighth Amendment violations without stating anything further. The Eighth Amendment protects prisoners from punishment that is deemed cruel and unusual. Prisoners usually allege Eighth Amendment violations for excessive force in conducting searches and for denial of certain human needs such as food and medical care.

### a. Verbal Threats and Harassment

■ The only possible claim the Court can see as a violation of the Eighth Amendment is Plaintiff's allegation that he was verbally harassed. Plaintiff alleges that he was provoked by Defendant Jacobs on December 24, 1993; (Compl. ¶ 5), harassed by Defendant Leghorns, who allegedly used profanity towards him, and by Defendant Francis; and provoked by Defendant O'Connor into a confrontation. (Compl. ¶¶ 2 & 6–7; Pl.'s Mem. Law at 1, 26–27.) Allegations of threats, verbal harassment or profanity, without any injury or damage, do not state a claim under § 1983. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) (name calling claim does not allege a constitutional violation); *Ragland v. Crawford*, No. 95 Civ. 10069, 1997 WL 53279 (S.D.N.Y. Feb.7, 1997); *Ramirez v. Holmes*, 921 F.Supp. at 209; *Santiago v. Coughlin*, No. 85 Civ. 2936, 1990 WL 4741, at *4 (E.D.N.Y. Jan.17, 1990) (verbal harassment by a guard does not state a cause of action); *Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y.) (racially derogatory remarks by a guard do not violate an inmate's constitutional rights), *aff'd*, 891 F.2d 278 (2d Cir. 1989). Here, assuming Plaintiff's allegations are true, he alleges only verbal harassment and threats by Defendants.[12] Those allegations do not support a § 1983 violation as a matter of law. Plaintiff's claims are therefore dismissed.

---

**11.** The regulation states:

> The inmate shall be advised of his right to appeal the disposition of the disciplinary hearing to the facility superintendent. Such appeal shall be submitted in writing to the superintendent or his designee shall issue a decision within 15 days of receipt of the appeal.

**12.** Plaintiff also alleges that he was subjected to pain by C.O. Mujahid and Defendant Sgt. Leghorn when Mujahid grabbed Plaintiff's injured finger during a pat frisk. (Compl. ¶ 1; Pl.'s Mem. Law at 16.) The Plaintiff does not explain under which theory Defendant Leghorn is implicated here. Plaintiff allegation is that Leghorn told Plaintiff to keep quiet as Mujahid squeezed Plaintiff's finger. (Compl. ¶ 1.) Accordingly, the Plaintiff has not sufficiently pled Leghorn's involvement and this claim is dismissed. *Colon*, 58 F.3d at 873; *see also infra* at 407–408. Furthermore, in order to find that the force used violates the Plaintiff's Eighth Amendment rights, he must demonstrate that the force used was unnecessary and not applied in a "good faith effort to maintain or restore discipline [but] maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Here, even assuming Plaintiff's allegations as true, the de minimis use of force exerted here does not amount to a use of force rising to an Eighth Amendment violation.

### 3. Plaintiff's Urinalysis Testing—Fourth Amendment

 Plaintiff alleges that Defendant Holder did not have probable cause to subject him to a urinalysis test, thus violating Plaintiff's Fourth Amendment rights. (Pl.'s Mem. Law at 28.) It is well established that urinalysis testing constitutes a search. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). However, it is equally well-established that a prisoner's rights to be free from unreasonable searches is diminished once he or she steps through the prison door.[13] *Id.* at 619–20, 109 S.Ct. at 1413–15; *Bell v. Wolfish*, 441 U.S. 520, 557, 99 S.Ct. 1861, 1883–84, 60 L.Ed.2d 447 (1979). If the intrusion into one's privacy is found to be minimal, as it is here,[14] and the expectation of privacy is minimal, as it is here, and there is a governmental reason advanced supporting a search, as is the case here, then the search will not violate one's Fourth Amendment rights. Under New York regulations, 7 N.Y.C.R.R. ch. 5, § 1020.4(a)(1)(iii), corrections personnel may order an inmate to submit to a urine test based on a reasonable suspicion and based on information from a source that the inmate is or has recently used illicit drugs or alcohol.

 Holder smelled marijuana from the gallery below him and requested other correction officers to investigate the matter. The corrections officers reported back to Holder that Plaintiff was the only person on the gallery and as a consequence Plaintiff was requested to submit to a urinalysis test.[15] Plaintiff's test was negative and accordingly, no charges were filed against him. The Court finds Defendant Holder thus had probable cause to order urinalysis.

Accordingly, Plaintiff's claim is dismissed.

### 4. Supervisor Liability

Finally, Plaintiff alleges that Defendants "Keane and Greiner, as early as February 20, 1993, learned of the differences between C.O. Francis, Lt. Patterson and plaintiff.... Plaintiff filed a grievance on C.O. Francis in September 1993.... Plaintiff filed a complaint against C.O. Jacobs in December 1993.... Plaintiff filed a grievance against Sgt. O'Connor and C.O. Canon, in July and August, 1994, respectively.... Both of the defendants were grossly negligent in managing all of the aforementioned defendants," (Pl.'s Mem. Law at 30), "and failed to remedy a wrong." (Pl.'s Mem. Law at 31.)

 Defendants contend that because Keane and Greiner were not personally involved in the alleged violations of Plaintiff's constitutional rights the Complaint should be dismissed as against them. (Defs.' Mem. Law at 21.) The personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon*, 58 F.3d at 873; *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff has failed to allege any direct involvement by these Defendants.

 Personal involvement is shown by evidence that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring." *Colon*, 58 F.3d at 873; *Williams v.*

---

**13.** See generally *Skinner*, 489 U.S. at 618–24, 109 S.Ct. at 1413–17; *Bell v. Wolfish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979).

**14.** Restrictions on one's movement to obtain a sample is minimal especially in prison. *Skinner*, 489 U.S. at 624–25, 109 S.Ct. at 1417–18. Furthermore, urinalysis is a commonplace, non-invasive test that is frequently performed.

**15.** Plaintiff contends that his confinement for four hours while waiting to take his urinalysis test violates his right to be free from cruel and unusual punishment. However, it is settled law of this Circuit that administrative keeplock is permissible.

*Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). Here, the Plaintiff has not shown that there have been any constitutional deprivations. The Plaintiff has also failed to come forward with any evidence, beyond conclusory allegations, to support any of these allegations. They are accordingly dismissed.

## III. CONCLUSION

The Court, having examined the Complaint in its entirety, and finding no other potential claims on Plaintiff's behalf, grants Defendants' Motion for Summary Judgment, dismissing Plaintiff's Complaint in its entirety.

Pursuant to 28 U.S.C. § 1915(a), any appeal from this Order would not be taken in good faith.

SO ORDERED.